**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANTHONY A. DeVIVO,

                              Petitioner,

     - v -                                      Civ. No. 9:08-CV-673
                                                      (DNH/RFT)

SUPERINTENDENT MANCE,

                              Respondent.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| ANTHONY A. DeVIVO<br>99-B-1896<br>Petitioner, *Pro se*<br>Marcy Correctional Facility<br>Box 3600<br>Marcy, New York 13403 | |
| HON. ANDREW T. BAXTER<br>United States Attorney<br>Northern District of New York<br>Attorney for Respondent<br>100 South Clinton Street<br>Syracuse, New York 13261 | CHARLES E. ROBERTS<br>Assistant United States Attorney |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     In accordance with and pursuant to the authority of the provisions of 28 U.S.C. § 636(b) and Rule 72.3(c) of the Local Rules of Practice of this District, the Clerk has sent to the Court for review a Petition for a Writ of *Habeas Corpus* brought, pursuant to 28 U.S.C. § 2241, by *pro se* Petitioner Anthony A. DeVivo. Dkt. No. 1, Pet.

     By his Petition, DeVivo asserts that on March 27, 1997, he was convicted in the Northern District of New York of conspiracy and possession with intent to distribute. Pet. at ¶¶ 1 & 4.

DeVivo alleges that the Honorable Thomas J. McAvoy, now-Senior United States District Judge, sentenced him to forty-three (43) months of incarceration plus four (4) years of supervised release. DeVivo claims that because he already served time in jail for a 1993 New York State drug conviction, which was related to the federal conviction, and spent time in detention during the prosecution of the federal charge, Judge McAvoy sentenced him to "time served" plus four (4) years of supervised release. *Id*. at ¶¶ 3 & 7.

DeVivo explains that since the date of his federal sentencing, he has spent an additional forty-nine (49) months in jail in connection with his related 1993 New York State drug conviction and asks that this time be applied as a credit in place of the four-year supervised release term. *Id*. at ¶ 7. As an "alternative," DeVivo asks that the additional time he spent in a New York State prison, in connection with a later conviction, be applied to "any time he may receive for a violation of [federal] Supervised Release that is pending." *Id*. DeVivo asks the Court to consent to his calculations for his federal sentence and declare, based on such calculation, that his federal sentence is fully satisfied, thus resulting in the lifting of a federal supervised release detainer currently lodged against him. *Id*. At no point does DeVivo, who is currently housed at Marcy Correctional Facility, challenge the validity of the basis for his detention in a New York State prison.

In opposing the relief sought by DeVivo, Respondent asserts that the Petition is barred by the doctrine of *res judicata*. Dkt. No. 5, Resp. Respondent further accuses the Petitioner of abusing the writ when, after Judge McAvoy denied his repeated requests to lift the federal detainer, DeVivo filed the instant action and was less than forthcoming with the Court as to the relevant history. *Id*. Finally, Respondent argues that, on the merits, DeVivo is not entitled to the relief he seeks.

## I. BACKGROUND

Despite the fact that DeVivo's Petition was rather vague, not only in factual details but also in enunciating the desired relief, this Court directed the Respondent to file a response to the Petition. Dkt. No. 2. Currently, DeVivo is in the custody of the New York State Department of Correctional Services (NYS DOCS), and is being housed at Marcy Correctional Facility. As stated above, the validity of that custody is not under attack in this action. Instead, DeVivo targets the calculation of his federal supervised release term and the federal detainer lodged against him in connection with his federal criminal case. Pet. at ¶ 1; *see also United States v. Joyner, et al.*, 3:95-CR-232 (TJM). The record supplied by the Respondent reveals the following:[1]

DeVivo was prosecuted federally for his role in a multi-defendant drug conspiracy operating in Binghamton, New York, in the early to mid-1990's.[2] *See United States v. Joyner, et al.*, 3:95-CR-232. On March 8, 1996, DeVivo pleaded guilty before Judge McAvoy to two counts of the second superceding indictment charging him with possession with intent to distribute cocaine, heroin, and marijuana. *Id*. at Dkt. Nos. 625 & 634. On March 27, 1997, Judge McAvoy sentenced DeVivo to time served. *Id*. at Dkt. No. 1447. Specifically, DeVivo was credited for guideline purposes with

---

[1] Where necessary, in an effort to provide a more complete and accurate narrative, the Court takes judicial notice of facts set forth in the various filings in the federal criminal docket report as they are not subject to "reasonable dispute" in that such information is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *Reed v. Alexander*, 2008 WL 3155310, at *1 n.3 (N.D.N.Y. Aug. 4, 2008) (taking judicial notice of an opinion docketed in a Western District of New York case to ascertain facts underlying the *habeas* petitioner's conviction).

[2] On March 5, 1993, DeVivo was arrested by state authorities for six sales of cocaine he made to an undercover officer in Binghamton, New York. Upon his guilty plea to one count in a state indictment, DeVivo was sentenced to an indeterminate term of three (3) to nine (9) years imprisonment. This conviction was upheld on direct appeal by the New York State Appellate Division, Third Department, *People v. DeVivo*, 631 N.Y.S.2d 547 (N.Y. App. Div., 3d Dep't 1995), and by the New York State Court of Appeals, *People v. DeVivo*, 664 N.E.2d 1264 (N.Y. 1996). On May 31, 1995, DeVivo was released on work-release, but was returned thirty (30) days later after testing positive for cocaine. That same year, he was indicted in the federal case. The conduct charged in the federal indictment is the same as that charged in the state case regarding the six cocaine sales made by DeVivo. *See* Dkt. No. 5, Ex. C.

the forty-three (43) months he already served in state custody for the 1993 offense related to the federal offense, which would "not be credited to the federal sentence." *Id*. at Dkt. Nos. 1447 & 1455. Upon his release from state prison, DeVivo was to be on federally supervised release for a term of four (4) years. *Id.*

On June 17, 1997, DeVivo was released on parole from state prison and was under the supervision of the New York State Division of Parole. Concomitantly, he began his four-year term of federal supervised release. *Id*. at Dkt. No. 2005 at p. 1. Approximately five (5) months into his state parole/federal supervised release term, a state warrant was issued, on or about November 3, 1997, charging DeVivo with violating the conditions of his state parole when he consumed alcohol at a bar; there were also allegations that he violated an order of protection. *Id*. DeVivo pled guilty to violating his parole and was returned to state prison. *Id*. On May 26, 1998, DeVivo was released from state custody (on parole)[3] and resumed his term of federal supervised release. From November 3, 1997, the date of his arrest, through May 26, 1998, the date of his release, the federal term of supervised release was stayed due to DeVivo's state incarceration. *Id*.

On July 28, 1998, approximately two (2) months following his release from state prison, DeVivo was arrested by state authorities in Broome County, New York, and charged with burglary, criminal trespass, and criminal mischief. *Id*. He was later indicted on these state charges as well as a perjury charge for allegedly lying to a grand jury, and, after being convicted by a jury, was

---

[3] According to the NYS DOCS Inmate Locator Website, Anthony DeVivo, DIN # 93-B-2067, who had been serving a sentence for criminal sale of a controlled substance in the third degree was released on parole on May 26, 1998. *See* http://nysdocslookup.docs.state.ny.us (last visited July 20, 2009).

sentenced on June 7, 1999, to consecutive and concurrent sentences of incarceration.[4] *Id.* Because DeVivo was convicted of a crime during his federal supervised release term, a federal violation petition was filed with this District Court on September 18, 2000, and Judge McAvoy issued a warrant for DeVivo's arrest. *Id.* at Dkt. No. 1848. Thereafter, the United States Marshal lodged the warrant as a detainer with NYS DOCS. Pursuant to the lodging of this detainer, upon DeVivo's release from state custody, he is to be produced before Judge McAvoy to respond to the supervised release violation petition.

On April 12, 2002, DeVivo filed two Petitions before Judge McAvoy, one pursuant to 28 U.S.C. § 2255 and one pursuant to 28 U.S.C. § 2254.[5] *Id.* at Dkt. Nos. 1902-03. According to the Criminal Docket Report, the relief sought in both Petitions was to have the District Court immediately address the federal detainer and supervised release violation charge. *Id.* On April 16, 2002, Bruce D. VanTassel, Senior United States Probation Officer, sent a letter to DeVivo conveying Judge McAvoy's determination that the Court is not under any obligation to produce DeVivo until he has completed his New York State sentence. *Id.* at Dkt. No. 1904. There is no indication in the Docket Report that Judge McAvoy ever directly ruled on DeVivo's Petitions, nor does it appear that DeVivo pursued the Petitions any further, though, as described below, he was not

---

[4] According to the NYS DOCS Inmate Locator Website, Anthony DeVivo, DIN # 99-B-1896, was received on August 31, 1999, after returning from parole conditions on convictions of burglary in the second degree, perjury in the first degree, and criminal mischief in the third degree. *See* http://nysdocslookup.docs.state.ny.us (last visited July 20, 2009).

DeVivo's state burglary, perjury, and criminal mischief convictions were upheld on direct appeal. *People v. DeVivo*, 726 N.Y.S.2d 145 (N.Y. App. Div., 3d Dep't 2001), *lv to appeal denied*, 756 N.E.2d 86 (N.Y. 2001). The denial of DeVivo's state collateral attack, via New York Criminal Procedure Law § 440.20, was also upheld on appeal. *People v. DeVivo*, 861 N.Y.S.2d 487 (N.Y. App. Div., 3d Dep't 2008), *lv to appeal denied*, 896 N.E.2d 100 (N.Y. 2008). Similarly, DeVivo's federal *habeas* collateral attack on his 1999 state conviction and sentence, pursuant to 28 U.S.C. § 2254, was denied, *DeVivo v. Supt., Auburn Corr. Fac.*, 2006 WL 581145 (N.D.N.Y. Mar. 8, 2006), and a certificate of appealability was denied, *DeVivo v. Supt., Auburn Corr. Fac.*, 2006 WL 1133235 (N.D.N.Y. Apr. 24, 2006).

[5] This Court could not access these Petitions electronically as they were not scanned into the system; we are relying on the Docket Text accompanying the filing in ascertaining what type of petition was filed.

deflated in his endeavor to obtain some relief.

Five years later, on January 30, 2007, DeVivo, by letter request, sought to have Judge McAvoy lift the federal detainer so that he could be eligible to participate in programs such as work-release. *Id*. at Dkt. No. 1998. By Order, dated February 2, 2007, Judge McAvoy denied the request without opinion. *Id*. at Dkt. No. 1999. Thereafter, on February 23, 2007, DeVivo filed a Motion to Lift the Federal Detainer. *Id*. at Dkt. Nos. 2000 & 2001. In support of his Motion, DeVivo asserted that the detainer was illegal or, in the alternative, any violation of his supervised release should be reduced to time-served. *Id*. On May 15, 2007, Judge McAvoy, via written Decision and Order, denied DeVivo's Motion to lift the federal detainer. *Id*. at Dkt. No. 2007. First, speaking to the legality of the detainer, Judge McAvoy noted that the warrant was issued due to DeVivo's commission/conviction of a crime, which violated the conditions of his federal supervised release and the warrant and detainer were properly filed with DOCS. *Id*. at p. 2. Next, as to the time computation argument, Judge McAvoy noted that the Court is not required to credit DeVivo with time served in the state prison to satisfy the supervised release term or any term imposed as a result of the federal supervised release violation. *Id*.

On May 23, 2008, DeVivo requested that his federal sentence be modified or that he be resentenced. *Id*. at Dkt. No. 2018. Again, he asked that credit for his time served in state prison be applied to the federal sentence in full satisfaction of his supervised release term and that any future sentence for violation of the terms of his supervised release also be reduced to time served. *Id*. On June 2, 2008, Judge McAvoy denied the request without opinion. *Id*. at Dkt. No. 2019. This *Habeas* Petition was then filed on June 27, 2008. After filing this *Habeas* Petition, DeVivo took one last shot in his 1995 federal criminal case by filing a letter, dated September 22, 2008, asking Judge

McAvoy to address the allegedly illegal federal detainer so that he could be eligible to participate in certain programs. *Id*. at Dkt. No. 2033. Judge McAvoy denied the request without opinion. *Id*. at Dkt. No. 2034.

## II. DISCUSSION

Under 28 U.S.C. § 2241, a prisoner may challenge the "*execution* of [his] sentence . . . such as calculations by the Bureau of Prisons of the credit to be given for other periods of detention, or decisions to deny parole, . . . or conditions of confinement." *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002) (quoting *Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997)) (emphasis in original) (internal quotation marks and citations omitted). Alternatively, § 2255 is the proper vehicle "when the federal prisoner seeks to challenge the *legality* of the *imposition* of a sentence by a court." *Id*. (emphasis in original).

DeVivo's current *Habeas* Petition, couched as one pursuant to § 2241, is somewhat of a quandary. Upon information and belief, on its surface, DeVivo's Petition does not appear to be an attack on the legality of the underlying 1997 federal conviction, nor does he appear to challenge the legality of the 1998 federal detainer, as he had previously argued before Judge McAvoy. Instead, DeVivo seems to be challenging the calculation of his federal sentence, or rather, the calculation of his supervised release term and any future sentence he might receive should it be determined that he violated the conditions of his federal supervised release. On the one hand, he proposes that the time he spent in state prison, relating to his 1993 state conviction and subsequent 1997 state parole revocation, should be credited to him so that his four-year term of federal supervised release would be deemed satisfied. On the flip side, DeVivo proposes that his recent stint of state incarceration, relating to the 1999 burglary/perjury state convictions, should be applied to any future sentence that

may be imposed concerning the violation of supervised release conditions. It is not clear whether these avenues are mutually exclusive, but what is clear is that by his Petition, DeVivo envisions a world where he will be released from state custody, free of any accountability to the federal government.

### A. Respondent's Opposition

Believing that DeVivo's Petition centers around the "legality" of the federal detainer, Respondent proposes, without citing any cases in support thereof, that such relief is barred by the doctrine of *res judicata*. Dkt. No. 5 at pp. 5-7. We have taken a slightly different view on the relief currently sought by DeVivo, though it has not escaped this Court's observation, as fully outlined above, that DeVivo has attempted on more than a few occasions to raise questions regarding the legality and/or execution of his federal sentence. At the time this Court directed a response from Respondent, we specifically identified some of the issues that concerned us, namely, the Court's jurisdiction to entertain the Petition, exhaustion issues, and ultimately, the merits. Dkt. No. 2 at p. 3. Much to this Court's chagrin, Respondent did not focus on these pressing issues. We concur that the issues raised before Judge McAvoy and now before this Court are certainly intertwined, however, this Court is unaware of the applicability of the doctrine of *res judicata* in a post-conviction *habeas* proceeding, and, as stated above, no authority was presented to the Court in support of this theory. *See Sanders v. United States*, 373 U.S. 1, 7-8 (1963) ("The inapplicability of res judicata to habeas, then, is inherent in the very role and function of the writ.");[6] *Muniz v.*

---

[6] Decades after *Sanders* was decided, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, which superceded *Sanders* in part by limiting the number of collateral attacks an inmate is entitled to pursue and by instilling certain court gatekeeping functions to preclude and/or curtail abuses of the writ. But the concept of the inapplicability of *res judicata* in post-conviction proceedings does not seem to be affected by the subsequent law. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (noting that the AEDPA's new restrictions on
(continued...)

*United States*, 236 F.3d 122, 126-27 (2d Cir. 2001) ("[I]t is well-settled that res judicata has no application in the habeas corpus or § 2255 context."); *Williams v. United States*, 2002 WL 31496225, at *1 (S.D.N.Y. Nov. 8, 2002) (citing *Smith v. Yeager*, 393 U.S. 122, 124-25 (1968) for the proposition that "the usual principles of res judicata are inapplicable" in *habeas* proceedings). In light of Respondent's narrowed argument, and based upon this Court's own independent research, we recommend denying Respondent's request for dismissal on the basis of *res judicata* and continue our analysis of the record before us.

### B. Jurisdiction

Though not raised by Respondent, in light of the unique history and circumstances of this case, the Court must examine whether it possesses the requisite jurisdiction over this matter.

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the want of its own jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 511-12 (1973); *Poindexter v. Nash*, 333 F.3d 372, 383 (2d Cir. 2003). A challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the court. *Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988); FED. R. CIV. P. 12(h)(3); *see also United States v. Griffin*, 303 U.S. 226, 229 (1938); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. at 229; FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

---

⁶(...continued)
successive petitions "constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'"). That is not to say that the doctrines of law of the case or abuse of the writ are similarly barred, however, such doctrines appear to apply to subsequent collateral petitions. *See*, *e.g.*, *Muniz v. United States*, 236 F.3d 122, 126 (2d Cir. 2001) (citing cases).

### 1. *Propriety of Writ Via 28 U.S.C. § 2241*

After reviewing the relevant case law, we are satisfied that § 2241 is the proper vehicle by which DeVivo may assert his claim for sentencing credit since such a claim has been construed as one challenging the "execution of [a] sentence rather than to the validity of a sentence." *Kaiser v. United States*, 2001 WL 237382, at *3 (S.D.N.Y. Mar. 9, 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997) for the proposition that a petition claiming credit for time incarcerated prior to sentencing is properly construed as a § 2241 challenge to the execution of the sentence) (further citing *United States v. Kakar*, 746 F. Supp. 369, 370 (S.D.N.Y. 1990) for the proposition that a claim for sentencing credit cannot be brought under § 2255 because "[a] claim for credit against the sentence attacks the computation and execution of the sentence rather than the sentence itself" and "the sentencing court has jurisdiction under [Section 2255] only to hear motions challenging the imposition of a sentence and not its execution."); *see also United States v. Koontz*, 2006 WL 1510143, at *1 (N.D.N.Y. May 31, 2006) (construing petition as one brought pursuant to § 2241 due to the relief sought, namely review of BOP's failure to credit petitioner's sentence with time served in state custody while under detainer of federal court); *United States v. Caceres-Lopez*, 1998 WL 16019, at *1 (N.D.N.Y. Jan. 12, 1998) (noting that a challenge for sentence credit must be made via § 2241). Satisfied then with the procedural vehicle by which DeVivo stakes his current claims, we proceed to other jurisdictional items.

### 2. *In Custody Requirement*

As set forth above, DeVivo is currently under the physical custody of NYS DOCS serving out his 1999 sentence. The matter of DeVivo's custody has not been raised by the Respondent. Nevertheless, we briefly address Petitioner's custody status. According to 28 U.S.C. § 2241, a writ

for *habeas corpus* may not be granted to a prisoner unless he is "in custody." 28 U.S.C. § 2241(c). While technically not in the physical custody of federal authorities, DeVivo is, for purposes of the current Petition, considered to be in federal custody. *See United States ex rel Meadows v. State of New York*, 426 F.2d 1176, 1179 (2d Cir. 1970) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968), for the proposition that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of § 2241(c)(3)" thereby allowing the petitioner to challenge the validity of his future custody). Federal custody over DeVivo is further evidenced by the detainer lodged against him with DOCS. *Id*. at 1179 (noting that a New York State detainer lodged against a federal prisoner constituted a "present claim by New York of jurisdiction over [the petitioner's] person and of the right to subject him to its orders and supervision in the future."). Therefore, we find that DeVivo is in federal custody for purposes of the current Petition.

## C. Merits

Satisfied that the Court has the requisite jurisdiction to entertain DeVivo's Petition, we turn to the mertis therewith. As noted above, by his current Petition, DeVivo explains that since the date of his 1997 federal sentencing, he has spent an additional forty-nine (49) months in jail in connection with the related 1993 New York State drug conviction and asks that this time be applied as a credit in place of the four-year supervised release term. Pet at ¶ 7. As an "alternative," DeVivo asks that the additional time he has spent, and is currently spending, in a New York State prison be applied to "any time he may receive for a violation of [federal] Supervised Release that is pending." *Id*. Because they require differing analysis, we address the merits of each of these requests separately.

### *1. Credit for 1993 State Conviction/1997 Parole Revocation*

Notwithstanding our finding that § 2241 is the proper procedural mechanism by which a prisoner submits a claim of sentence credit to the Court, we nevertheless find that DeVivo's request is premature because he failed to establish that he exhausted his administrative remedies. It is the United States Attorney General, who in turn delegated responsibility to the Bureau of Prisons (BOP), and not the federal courts, who are charged with the first opportunity to determine whether DeVivo is entitled to the credit he alleges. 28 C.F.R. § 0.96; *United States v. Wilson*, 503 U.S. 329, 333-35 (1992) (discussing congressional amendments to the sentence credit statute, codified at 18 U.S.C. § 3585 and noting that though written in the passive voice, the omission of the term "Attorney General" did not relegate the power of sentencing credit to the sentencing judge); *Martinez v. United States*, 19 F.3d 97, 99 (2d Cir. 1994) (directing prisoner to first exhaust administrative procedures available under 28 C.F.R. §§ 542.10 through 542.16 before seeking sentence credit relief in district court). Because it is the BOP who decides what credit a federal prisoner will receive, and such computation is made at the time an inmate arrives at his designated federal facility, it has been held that a prisoner must first pursue and exhaust available administrative remedies, prior to seeking collateral relief in district court. *United States v. Wilson*, 503 U.S. at 335 (citing cases and noting that the BOP has developed detailed procedures for prisoners seeking to challenge sentencing calculations/credit and "prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies"); *United States v. Keller*, 58 F.3d 884, 894 (2d Cir. 1995) (cited in *United States v. Greenwood*, 2007 WL 2463266, at *2 (D.Vt. Aug. 28, 2007)); *Thomas v. Craig*, 2007 WL 836870, at *1 n.2 (N.D.N.Y. Mar. 15, 2007) (citing *Wilson* and other cases for the proposition that federal inmates are "required to exhaust internal

administrative remedies prior to seeking habeas corpus relief under 28 U.S.C. § 2241"); *United States v. Koontz*, 2006 WL 1510143, at *1-2 (noting that a transfer of venue would be futile in light of, *inter alia*, petitioner's failure to exhaust his administrative remedies prior to seeking review of calculation of his sentence); *Tisdale v. Menifee*, 166 F. Supp. 2d 789, 791 (S.D.N.Y. 2001) ("A defendant who disputes the BOP's calculation may seek judicial review of any jail-time credit determination by filing a habeas corpus petition under § 2241 after exhausting administrative remedies.") (citations omitted).

There does not appear to be any indication in the record that DeVivo pursued any administrative remedy with the BOP prior to bringing the current Petition. To the extent DeVivo claims he is not being provided proper credit for time spent in state custody relating to his 1993 state conviction and subsequent 1997 state parole revocation, such claim must first be pursued with the BOP.

Notwithstanding the above analysis regarding exhaustion, we have reviewed the merits of DeVivo's claim and find that he is not entitled to the relief sought, thereby rendering futile any attempt to exhaust available administrative remedies. *Martinez v. United States*, 19 F.3d 97, 99 (2d Cir. 1994) (deciding on the merits that petitioner's claim for sentencing credit lacked merit notwithstanding the failure to exhaust); *United States v. Koontz*, 2006 WL 1510143, at *1-2 (noting the court lacked jurisdiction to entertain the petition as it was brought in the wrong court, but declining to transfer venue as the case was futile).

DeVivo contends that he should receive credit for the additional time he spent in state prison in connection with his 1997 parole revocation and that in applying such credit, his entire four-year term of federal supervised relief would be satisfied upon his release from state custody. To refresh

recollection, DeVivo was released on parole from state prison on June 17, 1997. On that date, his federal supervised release term began. 18 U.S.C. § 3624 (stating that a term of supervised release commences on the date the person is released from prison and shall run concurrently with any state parole). On November 3, 1997, after serving approximately five months of his four-year supervised release term, DeVivo was arrested and charged with violating the conditions of his state parole. After pleading guilty to violating parole conditions, DeVivo was returned to state custody. He was thereafter released from state custody on May 26, 1998. From November 3, 1997, the date of his arrest, through May 26, 1998, the date of his release, the federal term of supervised release was stayed. 18 U.S.C. § 3624(e) ("A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."). The explicit language in 18 U.S.C. § 3624(e) prohibits any credit being applied to the term of supervised release for time spent in prison. *United States v. Johnson*, 529 U.S. 53, 57-59 (2000) (analyzing § 3624(e) and concluding that "[t]he [rehabilitative] objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release").[7] Thus, DeVivo's claim for credit for additional time spent in state prison toward his term of supervised release term is futile and should be denied.

---

[7] In *United States v. Johnson*, 529 U.S. 53 (2000), some of Johnson's convictions were vacated on appeal, modifying his sentence to fifty-one (51) months. At that time, he had already served jail time exceeding that amount, thus, the district court had ordered his immediate release, at which point his term of supervised release began. Johnson then asked that his term of supervised release be reduced by 2 ½ years, representing the extra time he served in prison on the vacated convictions. The Supreme Court held that by its exact terms, § 3624(e) precluded the relief sought since a term of supervised release does not begin until release from prison. Further support for this conclusion was found in the statute's "purpose and design" whereby the Supreme Court relied upon the rehabilitative ends of supervised release, i.e., inmates are provided with post-confinement assistance in assimilating with the community, as distinguished by the penal and deterrent objectives served by incarceration. The Court concluded with the acknowledgment that Johnson is not without redress as he may petition the district court for a reduction of his term of supervised release after one year of service thereof, he simply was not entitled to credit for excess time spent in prison.

### *2. Credit for 1998 State Conviction*

Lastly, we turn to the relief sought regarding the pending federal violation arrest warrant, currently lodged as a detainer. As this claim attacks a conviction and sentence yet to be imposed, it is clear that such claim is neither ripe nor fully exhausted. *See Simmonds v. I.N.S.*, 326 F.3d 351, 356-57 (2d Cir. 2003). In *Simmonds*, the Second Circuit embarked on a discussion regarding the ripeness doctrine and explained that it actually has dual components, one stemming from Article III concerning the court's jurisdiction to entertain a claim for relief, the other pursuant to the court's finding of "prudential ripeness," noting certain cases are "*better*" decided at a later time and that no party's constitutional rights are undermined by a delay. *Id*. at 357 (emphasis in original). As the Circuit Court explained, "[p]rudential ripeness is, then, a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Id*. (citation omitted). Based upon the timing of DeVivo's Petition before this Court, we find that his request for future credit stemming from his current incarceration is not prudentially ripe and is better left for decision at a later time after DeVivo has been produced before Judge McAvoy and faces the outstanding federal warrant.

### **III. CONCLUSION**

After spending considerable time in piecing together the threads of this case, we find that Petitioner is not entitled to the relief sought and recommend dismissal of the Petition. Because we base our recommendation on the failure to exhaust and lack of merit, we do not address whether DeVivo has abused the writ in this instance.

**WHEREFORE**, after due consideration, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: July 20, 2009
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge